COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued at Alexandria, Virginia


CURTIS LEON BELL
                                        OPINION BY
v.         Record No. 2356-95-4    CHIEF JUDGE NORMAN K. MOON
                                        FEBRUARY 18, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  William L. Winston, Judge

          Denman A. Rucker (Rucker & Rucker, on brief),
          for appellant.

          Marla Graff Decker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General; Kimberley A. Whittle, Assistant
          Attorney General, on brief), for appellee.


     Curtis Leon Bell appeals his conviction of distribution of

cocaine and distribution of cocaine within one thousand feet of a

school property.  Bell raises two questions on appeal: did the

trial court err (1) in admitting into evidence oral statements by

Bell, lab reports, and a map, all of which had not been disclosed

to Bell's trial counsel pursuant to a discovery order; and (2) in

denying his request for a mistrial based upon the failure of the

Commonwealth to disclose the identity of a confidential

informant.  Because the Commonwealth had disclosed the

information to earlier counsel, and because the Commonwealth has

no duty to redisclose information every time counsel changes, we

affirm.

     Bell and the Commonwealth offered conflicting versions of

the facts.  Undercover officer King testified that on May 18,

1993, he and a confidential informant rode together to Culpeper Street, a known open-air drug market, with the intent to purchase cocaine. Upon their arrival, King testified that the confidential informant pointed out Bell and another man standing in a group as likely drug dealers. The confidential informant then exited the vehicle. King stated that he watched the informant walk down the street and that the informant never met with Bell. Instead, Bell broke away from the group and approached King's car. At the car, Bell inquired about how much money King had with him. King replied that he had $150 and testified that Bell then sold him $150 worth of cocaine. King and Bell then exchanged pager numbers in order that King could contact Bell to make future purchases.

King testified that immediately following the transaction he reported what had taken place to Lt. Medairos, a fellow officer who had been involved with the operation but who did not observe the transaction. Subsequently, Medairos prepared a police report indicating that the informant had made contact with Bell and had been involved in bringing Bell to King's car. However, at trial, Medairos testified that although it was the original plan for the informant to introduce King to Bell, "actually . . . Mr. Bell walked right over to Mr. King."

King testified that on May 25, 1993, he again met with Bell and purchased $300 worth of cocaine from him. King testified that he was alone when he met with Bell. Detective Fernandez, who was also involved with the operation on May 25, testified

that he did not see the informant with King on the day of the transaction.

Bell testified that on both May 18 and May 25, the informant was with King. Bell stated that on May 18, 1993, the informant went to Bell's home and at the informant's request Bell went out to acquire some cocaine for the informant's boss. Bell said that he returned with cocaine and delivered it to the informant who went outside and got into King's car. Bell stated that a few minutes later he proceeded to King's car and informed King that the informant had the cocaine.

Bell testified that on May 25, he was again contacted by the informant who "begged" Bell to supply additional cocaine for the informant's boss. Bell stated that he met with the informant and King and that at their urging he acquired an additional $300 worth of cocaine, which he gave to the informant.

Bell was indicted on August 16, 1993 on two counts of distribution of cocaine and one count of distribution of cocaine within one thousand feet of a school zone. Stephen Crum was appointed to represent Bell in a number of cases, including this case. Prior to proceeding in any of the trials, Bell discharged Mr. Crum and retained Clarence Stanback. Mr. Stanback represented Bell in several trials, but was replaced in February, 1995 by counsel who represented Bell on trial of the charges now on appeal.

During trial, Bell's counsel moved for a mistrial arguing that he had only learned of the involvement of the informant the

day before trial and it had been incumbent upon the Commonwealth, given the extensive involvement of the informant, to reveal to present counsel the identity of the informant. A hearing on the extent of the informant's involvement was conducted during trial, in the absence of the jury. During this hearing, Bell's first attorney, Mr. Crum, testified that he had been granted open discovery and that while reviewing the prosecutor's files, he had discovered and taken notes on a police report which indicated the informant had significant involvement in the cocaine transactions. Mr. Crum testified that he turned his notes over to Mr. Stanback when Mr. Crum was replaced as counsel by Mr. Stanback. Bell's present counsel stated that he had been notified by Mr. Stanback the day before trial that Mr. Stanback had found Mr. Crum's notes regarding a police report detailing the informant's involvement. These notes were delivered to Bell's counsel the day before trial. At the conclusion of the hearing the trial court found that there had not been sufficient involvement of the informant to require disclosure of the informant's identity and accordingly, the trial court denied Bell's motion for a mistrial.

Bell also objected to the introduction into evidence of conversations between Bell and King, certificates of analysis, and a map of the area of the second transaction. Counsel argued that the items should have been excluded because they had not been provided to Bell's present counsel prior to trial. The Commonwealth argued the items should be admitted because they had

- 4 -

been provided to one of Bell's two prior attorneys.  The trial court admitted the items into evidence.

### Admission of Evidence

Bell contends that the Commonwealth violated its discovery obligation by failing to provide Bell's present counsel with copies of laboratory reports, of Bell's statements to King, and of a map.  Bell's first and second attorneys were each provided these materials during discovery.  Bell's first attorney had open-file discovery and accordingly had direct access to all of the Commonwealth's information.  Bell's second attorney had written discovery which the record indicates the Commonwealth complied with, again making available to Bell's counsel the requisite information.

"When an accused is represented by counsel, the requirements of Rule 3A:11 . . . are satisfied when defense counsel is afforded the opportunity to inspect the Commonwealth's evidence." Pope v. Commonwealth, 234 Va. 114, 120, 360 S.E.2d 352, 356 (1987), cert. denied, 485 U.S. 1015 (1988).  The record supports the trial court's conclusion that the Commonwealth complied with the discovery order by exhibiting the items of evidence to Bell's first two attorneys.  We find nothing in the law of Virginia which would require the Commonwealth, under the facts and circumstances of this case, having once disclosed the information to Bell's original attorneys, to yet again provide this same information to Bell's latest attorney.  Accordingly, the trial court committed no error in admitting the evidence.

### Confidential Informant

In the midst of trial Bell's counsel asked the trial court to declare a mistrial on the basis that the Commonwealth had failed to disclose the identity of a confidential informant Bell claimed had extensively participated in the purchases made on May 18 and May 25. The record proves that the Commonwealth disclosed to Bell's prior counsel the involvement of the informant. For the same reasons stated above, the Commonwealth had no duty to redisclose the same information to new counsel. Further, the record indicates that Bell himself knew the informant, although he was unaware of the informant's status as an informant. Accordingly, Bell's motion for a mistrial was without merit.

Affirmed.